CONSOLIDATED GAS COMPANY *vs.* GEORGE L. CONNOR—THE SAME *vs.* ELIZABETH GOODMAN.

*Liability of Gas Company for Injury Caused by Escape of Gas from Street Lamp Owned by City.*

When, in carrying out its contract with a city to supply gas to city lamps, a gas company distributes the gas through defective pipes, under its control and which it was bound to inspect and repair, and thus permits the gas to escape into streets and houses, the company is liable to anyone who may suffer injury in consequence of its failure to exercise due care to keep the pipes in repair and to discover leaks therein.

The defendant gas company, by its contract with the municipality of Baltimore, agreed to supply gas to street lamps owned by the city and to make connections by means of service pipes from its main pipes to the lamps, the city agreeing to pay a certain sum for each new lamp connected with the main. The contract did not expressly require the gas company to repair the service pipes, but both parties treated the duty to do so as devolving on the company. Whether the service pipes were owned by the city or by the company is not clearly shown. Plaintiffs were made ill by an escape of gas from a city lamp placed in front of the house they occupied, and brought these actions against the gas company to recover damages therefor. For three or four days prior to the injury a constantly increasing odor of gas was perceived in the street, and the lamp referred to could not be lighted. The gas company was notified, and its employees examined the locality without discovering the leak. After the injury to the plaintiffs, these employees dug up the soil at the base of the lamp-post, and discovered the leak in the fitting which joined the horizontal pipe laid from the main to the lamp-post with the vertical pipe rising up through the interior of

the post.  *Held,* that whether the service pipe belonged to the
city or not, it was the duty of the gas company to see that it
was kept in repair.

*Held,* further, that the evidence was legally sufficient to show
that the defendant company was negligent in failing to dis-
cover and repair the leak in the pipe, and that it was for the
jury to say as matter of fact whether the examination made
by it which failed to discover the leak was a due examination.

*Held,* further, that although in supplying gas the company
was acting under a contract with the city, it is liable to third
persons for its misfeasance in the performance of that duty
by which injury was occasioned.

The declaration in this case charged that the defendant was
negligent in failing to repair its pipes.  The jury was in-
structed that they might render a verdict for the plaintiff if
they found that by reason of its failure to use due care, the
gas supplied by the defendant leaked or escaped from its
pipes or from pipes which in the operation of its business it
used and assumed the duty of repairing.  *Held,* that the dec-
laration is sufficient to cover both the theory of ownership of
pipes by the city and the theory of the defendant's assump-
tion of their control and repair.

*Decided November 16th, 1910.*

Appeal from the Superior Court of Baltimore City (HAR-
LAN, C. J.).  In the suit by the appellee Connor there was a
judgment on verdict for the plaintiff for $350.  In the suit
by the appellee Goodman there was a judgment on verdict for
the plaintiff for $1,000.

*Plaintiffs' 2nd Prayer.*—That it is the duty of the defend-
ant to exercise such care in the inspection and control of its
pipes and in the operation of its business and in the inspec-
tion and control of pipes which, in the operation of its busi-
ness, it uses and assumes the duty of repairing, as would be
used by persons of ordinary care in similar business, or in

the business of manufacturing and handling of similarly dangerous substance. And if the jury find that by reason of its failure to use such care the gas of the defendant leaked or escaped from its pipes or from pipes, which in the operation of its business it used and assumed the duty of repairing, outside the house and premises occupied by the plaintiffs into the cellar and other parts of said house and premises and that the plaintiffs, whilst sleeping in their bedroom on the second floor of said premises, were injured by inhaling said gas, then the plaintiffs are entitled to recover; unless the jury find that the acts of the plaintiffs on such occasion in going to sleep in said bedroom, under all the circumstances, were such as persons of ordinary care would not have done under said circumstances. (*Granted.*)

The cause was argued before BOYD, C. J. BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Vernon Cook* (with whom were *Gans & Haman* on the brief), for the appellant.

The lower Court permitted the case to go to the jury upon two alternative theories, as shown by the plaintiffs' second prayer, which was granted. The theory of this prayer is that the Gas Company was bound to exercise due care in the inspection and control of pipes owned by it, and of pipes which were not owned by it, but which it used and assumed the duty of repairing, and the jury were told that if they found that the company failed to use such care, either as to its own pipes or as to pipes which it used and assumed the duty of repairing, that then if there was no contributory negligence, they should find in favor of the plaintiffs.

This instruction assumes three things:

1. That there was evidence from which the jury might find that the Gas Company owned the pipe in which the leak occurred.

2. That even if the jury did not find such ownership in the Gas Company, yet if they found that the Gas Company, as between itself and the City, had assumed to keep this service pipe in order, that this contractual relation made the Gas Company liable directly to the plaintiffs for its failure to carry out its contract with the City.

3. That there was evidence of negligence on the part of the Gas Company in not maintaining pipes of one class or the other in proper condition.

In all three of the points above mentioned, we contend there was error.

The Court below, we think properly enough, refused to permit witnesses on either side to answer the direct question as to ownership, and ruled that they might state any facts within their knowledge tending to throw light upon the same, but that they should not answer the direct question, because such an answer would be either a mere opinion, or the view of the witness as to the law.

The uncontradicted evidence is that these pipes are furnished by the Gas Company upon the order of the City for the use of the City in connection with a City lamp post established under City ordinances, for the purpose of lighting the City streets. The labor and material used in this connection is charged against the City. The company never claimed to own such service pipes. The City, while it now contends that it does not own these pipes, has nevertheless, by the uncontradicted evidence, through a long series of years, practically admitted such ownership by reason of the fact that it has, from time to time, given the Gas Company orders in reference to the removal, cutting off or repairing of such pipes, and that it has always recognized its liability to the company for work done by the company on or in connection with such pipes. This appears from the testimony of the witnesses, also from the contracts and bills offered in evidence. If these pipes belong to the Gas Company, on what possible theory should the City have paid for the repair of

one of such pipes when it was broken or damaged? In the Record will be found specific instances where under the contract in force at the time of the accident in this case, the Gas Company repaired broken lamp services and rendered bills therefor to the City, which bills were paid without question. These bills in each case specifically show that certain fittings were charged to the City in each case, and other evidence shows that an "L," such as that broken in the present case, is one of the fittings that goes into every lamp post.

The evidence was all one way as to the ownership of the service pipes. We use this expression "service pipes" in its broadest sense, including the horizontal pipes from the main to the post, the vertical pipe inside the post, and the "L" connecting the two. If anything, our position is even stronger in the case of the "L" and the riser than in the case of the service pipe proper. The two latter are inside of and attached to the lamp pillar, which it is conceded belongs to the City, and under the application of the familiar doctrine of accession, the title to the riser, the "L," and service pipe would follow the title to the lamp pillar or post, which is the principal thing. 1 *Am. & Eng. Encyc.*, 248: "It is a generally recognized rule of property that a product which results from the combination of the materials of several individuals belongs to the one who contributes the principal element."

The principal element in this case is the lamp pillar, the property of the City, the value of which obviously far exceeds the cost of the pipe, shown to be sixty cents, and the cost of the "L," five cents.

It is a familiar principle that if A. owes a duty to B., and A. by contract agrees with X. that X. shall do whatever is necessary to perform such duty, B. not being a party to this contract, and if X. then fails to carry out his contract with A., that in such case B. has no right of action directly against X., but must look to A., and A. must, in turn, if the facts warrant it, bring a suit against X.

Applying this to the present case, we submit that under the ordinances offered in evidence, it is entirely clear that the primary duty with regard to keeping lamp posts and their appurtenances in repair is upon the City, and even if it be conceded, for the sake of the argument, that by some contract or course of dealing the Gas Company has undertaken, as between itself and the City, to keep these service pipes in repair, and even if it be further conceded, for the sake of the argument, that the Gas Company failed to carry out such contract, and failed to keep this particular pipe in repair, whereby there was a leak causing injury to the plaintiffs, then it is clear, under all the authorities, that the plaintiffs' remedy is against the City as the one primarily liable, and not against the agent of the City, to whom the City has undertaken to delegate this work. *Hand* v. *Evans,* 88 Md. 229; *Eastern Adv. Co.* v. *McGaw,* 89 Md. 86; *Lampert* v. *La Clede Gas Co.,* 7 Western Rep. 745; *Nickerson* v. *Bridgeport,* 46 Conn. 24; *Atkinson* v. *New Castle,* L. R. 2 Exch. Div. 441; *Davis* v. *Clinton,* 54 Ia. 59.

In this case if there is any neglect to be ascribed to the Gas Company, it is at most nonfeasance, and not misfeasance. The only thing that can be said in criticism of the company is that it did not find the leak. It is not shown or claimed that it did anything to make the situation worse than it would have been had the company's employees paid no attention whatever to the post on Hakesley Place. Illustrating nonfeasance and misfeasance, as applied to the circumstances of this case, it is clear that if the Gas Company had paid no attention to the notices of the leak, and sent nobody to Hakesley Place, that would have been mere nonfeasance with no liability. If, on the other hand, they had sent a man to search for the leak, and he, finding a considerable escape of gas, had carelessly and negligently searched for this leak with a lighted match or candle, and caused an explosion, injuring the plaintiffs, this would have been misfeasance. The facts in this case are that the company sent three men to search

for a reported leak. They did search for it in the usual way. They did not find it. They did nothing to aggravate the situation. The harshest criticism that could be made of them is that they did not find the leak—that is, that they did not do what it is claimed the company has agreed to do. This is nonfeasance, and not misfeasance. *Sherman & Redfield, Negligence,* secs. 243-244.

Even if we assume, for the sake of this branch of the argument, that the broken pipe belonged to the company, or was one that they had assumed to keep in repair, and that a failure to keep the same in repair gave the plaintiff a right of action directly against the defendant, yet we still contend that the defendant was not guilty of negligence. The mere fact of a leak in the gas pipe is not of itself negligence under the previous decisions of this Court. *Brady* v. *Consolidated Gas Co.,* 85 Md. 642; *Consolidated Gas Co.* v. *Crocker,* 82 Md. 124. In the *Brady case* just cited the Court, speaking of a failure to stop a leak of gas, says: "This is not a case in which negligence may be inferred from the occurrence of the injury."

The contention of the plaintiffs will be that after the company was notified of this leak, that its men who visited Hakesley Place on the following day were guilty of negligence in not locating the leak. This conclusion we submit is not justified by the evidence. Of the three men who visited Hakesley Place, one is dead, one had left the City, and the third testified. His testimony instead of showing negligence, on the contrary shows that he and his associates did everything that reasonably could have been expected under the circumstances. The Gas Company sent not one man, but three. The search for the leak was made not by one man, but by three. They all agreed at the time they were there that there was no leak. The lamplighter, who happened to be present, agreed with them. They all searched for the leak, and no leak was found. What more could they have done at that time than they did do? The

evidence does not disclose that there was anything further which they could have done.  They used reasonable diligence and the company certainly·used reasonable diligence in sending three men to check up each other's work.  No further report of a leak came to the company until after the injury to the plaintiffs.

It is entirely immaterial, for the purposes of this case, whether the company's leak gang consisted of one hundred men or only the three men in question.  There is no causal connection between the alleged failure to have sufficient men in the leak gang and the plaintiffs' injuries.

*Isaac Lobe Straus* and *Wm. Pinkney Whyte, Jr.,* for the appellees.

The record is replete with proof that the Gas Company was grossly negligent in many respects in the maintenance, inspection and control of its pipes, plant and gas, and in the operation of its business, and that said negligence was the efficient proximate cause of the injuries to the plaintiffs.

The testimony of a number of witnesses showed that the gas had escaped and was noticed in the street as early as Tuesday morning, four days before it injured the plaintiffs in the bedroom of their home.  The proof showed further that the Gas Company has assumed the duty of locating and remedying leaks of gas.  The evidence is also abundantly to the effect that the gas constantly and steadily increased in the street from Tuesday until Friday night and Saturday morning.  The Gas Company, according to the undisputed evidence, did not stop the escape of gas, as it should have done, until after the injury to the plaintiffs.  It is, moreover, undisputed that it was the gas of the defendant, so allowed to escape and accumulate for four days,·which injured the plaintiffs.

The Gas Company was notified on or before Wednesday of the leak.  The evidence establishes that they had such notice, and it is clear beyond doubt that they did have it,

because, as the proof shows, they sent their leak gang to the vicinity on Wednesday, several days before the injury. These men, the employees of the company, went to Hakesley Place, to the lamp post in question, and although everybody else in the neighborhood smelt the gas abounding in the street, these employees failed to find the cause of its escape or to correct and repair it. In this connection, the proof also discloses that the men stayed there about twenty minutes, and that they made only a superficial and perfunctory examination. They did not use the instruments on Wednesday as they used them on Saturday, according to their own testimony, to locate any leak beneath the pavement. The examination which they made was on its face, according to their own testimony, an indifferent, careless and negligent one.

The proof shows that in Baltimore City the Gas Company had some four hundred and fifty-five miles of mains, and also seventy-nine thousand service pipes, and also under the law a monopoly in the gas business, and that, nevertheless the company kept only four or six men engaged in the work of locating and repairing leaks. When one considers the poisonous and fatal qualities of the gas which this company was thus handling, the numerous population of the city, densely and thickly settled, upon a comparatively limited territory, and the fact that there were four hundred and fifty miles of mains, some 79,000 service pipes and other ramifications of their plant and system through which this poisonous and fatal agency was carried and distributed, it was certainly negligence of the gravest sort for the company to maintain but from four to six men for the inspection of this plant and the discovery, location and repair of leaks.

That the gas is dangerous, explosive, poisonous and fatal and that the company knew it, is admitted. To permit such a condition as is above described to exist without prompt remedy, is negligence. *Consol. Gas. Co.* v. *Croker,* 82 Md. 113; *Consol. Gas Co.* v. *Getty,* 96 Md. 683; *Brady* v. *Gas Co.,* 85 Md. 637; *Mose* v. *Hastings Gas Co.,* 4 F. & F. 324; *Koelsch* v.

*Gas Co.*, 152 Pa. St. 355; *Gas Co.* v. *Baker*, 146 Indiana, 600; *Smith* v. *Gaslight Co.*, 129 Mass. 318; *Finnegan* v. *Gas Works*, 159 Mass. 312; *Hunt* v. *Gas Co.*, 3 Allen, 418; *Emerson* v. *Gas Co.*, 3 Allen, 410; *Butcher* v. *Gas Co.*, 12 R. I. 149; *Chisholm* v. *Gas. Co.*, 57 Ga. 28; *Ray's Negligence Imposed Duties*, 145; *Whitaker-Smith on Negligence*, 423-428; 234-6; 20 *Cyc.* 1170; *Sherman and Redfield on Negligence*, secs. 697-692; *Thompson's Negligence*, sec. 11, page 108.

After the accident, it will be noted, the defendant's employees ran their rods into the earth and discovered the leak. Why did they not do this or something of the kind on Wednesday before the accident? The proof shows that they stayed there a most limited time—only about twenty minutes. They said they only smelt about the lamp and did nothing more and they discovered nothing, while a dozen witnesses, residents of the neighborhood, testified to the strong effects on that same day of the liberated gas in the street. The accounts given by the company's employees of what they did, are exceedingly vague and unsatisfactory. Failure to make proper inspections of a plant carrying agencies dangerous to life and property is negligence. On reasonable inspection see *Koelsch* v. *Phila. Co.*, 152 Pa. St. 355; *Mose* v. *Hastings, Etc.*, 4 Fos. & F. 324; *Holly* v. *Boston Gas Lt. Co.*, 8 Gray, 123; *Crawford* v. *United Rys.*, 101 Md. 402.

Escape of gas in public streets unless explained in *prima facie* evidence of negligence. *Smith* v. *Boston Gaslight Co.*, 129 Mass. 318; *Crocker's Case*, 82 Md. 113; *Getty's Case*, 96 Md. 683; *Crawford* v. *United Rys.*, 101 Md. 402, 417-18.

When the company confessedly received notice that there was a serious leak in the vicinity of the house that was afterwards damaged, did it use due and reasonable diligence to prevent it; if it did not, then it was guilty of negligence; if it did, then it was not guilty of any negligence. Whether it did or did not use due and reasonable diligence to locate the

leak was a question of fact for the jury in the circumstances of this case. *Getty* v. *Gas Co.*, 96 Md. 688.

The record is full of proof that the Gas Company owned the pipe from which the gas which injured the plaintiff escaped; and as against this cumulative proof of the company's ownership of the said pipe, there is, in effect, no proof that the company did not own the pipe, the attempt of the company to prove that they did not own the pipe having been unavailing and futile.

The evidence in the case shows particularly, that the defendant in the operation of its business had appropriated and adopted the pipe from which the gas which injured the plaintiffs escaped, as a part of its plant and system of mains, pipes and conduits, referred to in the declaration and justified the Court in granting the second instruction for the plaintiffs. *Comm.* v. *Lowell Gas Co.*, 12 Allen, 77; *Washington Gas. Co.* v. *D. C.*, 161 U. S. 316.

URNER, J., delivered the opinion of the Court.

The two appeals embraced in this record were taken from judgments recovered by the appellees in separate suits against the appellant for personal injuries resulting from the inhaling of gas which was alleged to have escaped from the appellant's pipes through its negligence. As the causes of action were practically identical the cases, by agreement, were tried together in the Court below.

The appellees, Elizabeth Goodman, formerly Connor, and her minor son, George L. Connor, lived at the corner of Hakesley street and Bond Street alley, in Baltimore City. At this corner there was a city lamp which was supplied with gas by the appellant under a contract with the municipality. While the appellees were asleep at night, in a room on the second floor of their dwelling, they were made ill by gas which escaped from a leak in the service pipe connecting the city lamp with the appellant's main. Subsequent investigation located the leak in the fitting, called an "L,"

which joined the horizontal pipe, laid from the main to the base of the lamp-post, with the vertical pipe, or "riser," extending upwards, through the interior of the post, to the burner.

The only rulings of the Court below presented for review are those disposing of the prayers offered by the respective parties, and the questions involved are: first, as to the legal sufficiency of the evidence to show negligence on the part of the appellant; secondly, as to the liability of the appellant for the consequences of the escape of gas from a pipe, the ownership of which it claims to have conclusively proven to be in the city of Baltimore; and thirdly, as to the responsibility of the appellant to third persons for alleged negligence under its contract with the city.

In connection with its contract to supply the city lamps with gas, the appellant, as the record shows, undertook the duty of keeping the service pipes in proper condition. Whenever leaks occurred the established practice was for notice to be given to the Gas Company through the office of the City Superintendent of Lamps and Lighting, and the company would make the necessary repairs. Independently, therefore, of any question of obligation on the part of the appellant to the appellees, the primary inquiry is whether the company was shown, by legally sufficient evidence, to have been negligent in the performance of the duty it assumed to keep in repair the pipes through which its gas was furnished to the city.

There is evidence in the record to the effect that three or four days before the night on which the appellees were injured, gas had been noticed in the street outside of their house; that the odor was slight at first, but grew stronger from day to day; that the street lamp was out all that week, and the lamplighter could not light it; that the Gas Company was notified, and on Wednesday, two days before the injury to the appellees, the company's employees visited the place and detected no odor of gas; that they made an unsuc-

cessful search for a leak by smelling at the burner, but made no investigation at or beneath the surface of the ground; and that on Saturday, the day after the injury was sustained, the employees of the company dug up the soil at the base of the lamp-post and discovered the leak at the point already described.

It has been held by this Court that it is "for the jury to say as a matter of fact, and, therefore, not for the Court to determine as a matter of law, whether an inspection which failed to discover what other persons in the same situation as was the inspector were aware of was a due and reasonable inspection." *Consolidated Gas Co. v. Getty,* 96 Md. 688. If the appellant's agents had made on Wednesday the kind of inspection they made on Saturday, there can be no doubt that the leak would have been discovered and repaired in time to avoid the injury to the appellees. It could not justly be held that an examination which is shown to have been as incomplete and ineffective as the one first made was sufficient to relieve the appellant from the imputation of negligence in the performance of so serious a duty as that of providing against the escape of the dangerous product it was engaged in distributing. It could not discharge that duty, as this Court has said, "by assuming without knowing that the leak proceeds from one source, when, in fact, it proceeds from a totally different source which could have been discovered by proper inspection." *Consolidated Gas Co. v. Crocker,* 82 Md. 124. The question of negligence was clearly one for the jury to determine under the circumstances shown by the record.

It was urged, however, on behalf of the appellant, that according to the uncontradicted evidence, the service pipe in which the leak was found belonged to the city, and that therefore, the appellant could not be held responsible for the escape of gas at that point.

By the contract under which the city lamps were supplied with gas, for the period covering the accident in question, it.

was provided, among other things, that the appellant should make connection from its main pipes to such lamps as might be erected by the City along the lines of the mains; that the ·company should make such changes in the services supplying the lamps then in use, or which might thereafter be put in use, as might be requested by the City; that there should be paid by the City to the company the sum of five dollars for each new lamp connected by it to its mains, "this payment to cover the cost of laying the service and making the connection from the gas main to the lamp;" and that the City should pay to the company the "actual cost of making any changes or alterations in its services or connections to any street lamp" then or thereafter erected under the contract.

The situation, therefore, is one in which the City, owning the lamp-posts and lamps, arranged with the Gas Company to supply the lamps with gas. In order that this might be accomplished, it was necessary for the company to instal service pipes extending from the mains to the burners. The "cost of laying the service and making the connection" is stipulated to be paid by the City at a designed flat rate, but no provision is made for the transfer of title to the materials employed in the work. On the contrary, the retention of title in the company is suggested in the stipulation for the payment to the company of the cost of any changes in "its services or connections," made at the request of the City.

In the bills rendered by the company to the City for making new connections, the charge was merely "for connecting services to new gas lamps," at the flat rate per lamp prescribed by the agreement. The lamp-post here in question was connected with the main in October, 1908, and the bill for this and other connections for that month was: "for erecting new gas lamps" at the flat rate then in force. In none of the bills in the record for connecting the lamps with the mains is any mention made of the materials used for that purpose.

There is nothing in the contract expressly requiring the company to repair the service pipes, and yet that duty has been treated by both parties as devolving exclusively upon the company. The only payments shown by the evidence to have been made by the City to the company on account of repairs were in cases where lamp-posts, concededly the property of the City, had been broken off by a runaway team or other cause. When a lamp was removed to a different location the old service pipe was not taken up, but a new connection was made for which the City was charged at the contract rate. It was in evidence that the City always disclaimed ownership of the service pipes and that this was a disputed question between the municipality and the company.

There were other circumstances relied upon by the appellees as tending to show that the service pipes were not the property of the City, but those we have referred to are sufficient to make it apparent, at least, that ownership by the City was not so conclusively proven by the evidence as to justify the withdrawal of the case from the jury on that ground.

It does not appear, however, that this consideration is vital to the appellees' case. In view of the nature of the business in which the appellant is engaged it would, in our judgment, be unduly limiting its responsibility to hold that notwithstanding it should be found to have been neglectful of its duty to repair the service pipe in question, it should be exempted from liability to a third person for the injurious results of its negligence merely because the pipe might be shown to be the property of the municipality. The substance which the appellant manufactures and delivers to its consumers through its system of mains and connections is highly dangerous to persons and property, and the duty of the company is to use all reasonable precautions to confine this agency within the channels where it may be employed with safety and utility. As the current which the company sets

in motion is sent through the entire extent of mains and service pipes which it has established for its own profit, and which it has undertaken to repair without reference to the technical question of ownership, it is only just that the measure of its liability to those affected by any negligence in this regard should equal that of its duty and opportunity to keep the system in repair.

In *Richmond Gas Co. v. Baker,* 146 Ind. 600, where the suit was for injuries sustained by an explosion of gas which escaped from a leak in an elbow connecting a conducting pipe with the plumbing of a dwelling house, it was said by the Court: "The company was supplying the house with artificial gas, a penetrating, elusive and explosive material, and hence one that was at anytime liable to become dangerous unless carefully guarded. The company, therefore, owed a duty to all persons who might be injured by the gas to use ordinary and adequate care in delivering the substance into the residence in question."

In *Washington Gas Light Co. v. District of Columbia,* 161 U. S. 316, where the District was suing for reimbursement from the Gas Company on account of damages which the former had been compelled to pay a pedestrian for injuries sustained by reason of a gas box in a sidewalk being out of repair, the Supreme Court, in enforcing the liability of the company for neglect of duty in reference to the repair of the box, said: "Nor do we think that this duty was affected by the circumstances that the cost of the labor and material used in the construction of the connection and gas box was paid by an occupant or owner of property who desired to be furnished with gas. As the service pipe and stopcock was a part of the apparatus of the company and was used for the purpose of its business, it is entirely immaterial who paid the cost or might in law, on the cessation of the use of the service pipe and gas box by the company, be regarded as the owner of the mere materials. Certainly, it would not be claimed that if the box and its connections be-

came so defective or out of repair that gas escaped there-from, and caused injury, the company could legally assert that it was under no obligation to take care of the apparatus, because of the circumstance that it had been compensated by others for its outlay in the construction of the receptacles from which the gas had escaped."

In the present case the duty of the company to make the necessary repairs to the pipe in which the leak occurred was clear and exclusive, and there was evidence from which negligence in the performance of that duty was inferable. Under these circumstances the company would not be exempt from responsibility to those suffering from such neglect even though the ownership of the service pipe had been conclusively shown to have been in the City.

But it is insisted that the company was, in this connection, operating as the agent of the City under a contract for the illumination of the City streets, and that while it may have assumed the duty of keeping the service pipes in repair, yet that was a duty which it owed solely to the City, and any neglect to perform it could be regarded only as a nonfeasance for which the company would not be liable to third persons. The appellant concedes that it would be liable to anyone injured by its *misfeasance* while acting as the agent of the City, but it contends that any negligence which might be found in this case consisted only of a failure to do that which was undertaken to be done, and amounted, therefore only to *nonfeasance*.

The distinction between these two classes of negligence has been frequently considered, and it is well settled that nonfeasance is the non-performance of a duty, for which the agent is liable only to his principal, while misfeasance is the improper performance of a duty, for which the agent is liable to third persons injured by such negligence. If, for example, the Gas Company in this case had failed to supply gas to the City lamps in accordance with its contract, this would have been a nonfeasance, for which the company would

have been responsible only to the City. But when, in carrying out the contract, it distributes the gas through defective pipes and thus permits it to escape into the streets and houses of the City, there is manifestly involved an affirmative element of negligence amounting to misfeasance, and for this the company is liable to anyone who may suffer in consequence.

The Supreme Judicial Court of Massachusetts, in *Osborne v. Morgan,* 130 Mass. 102, has clearly stated the distinction as follows: "It is often said in the books that an agent is responsible to third persons for misfeasance only, and not for nonfeasance. And it is doubtless true that if an agent never does anything towards carrying out his contract with his principal, but wholly omits and neglects to do so, the principal is the only person who can maintain any action against him for the nonfeasance. But if the agent once actually. undertakes and enters upon the execution of a particular work, it is his duty to use reasonable care in the manner of executing it, so as not to cause any injury to third persons which may be the natural consequence of his acts; and he cannot, by abandoning its execution midway and leaving things in a dangerous condition, exempt himself from liability to any person who suffers injury by reason of his having so left them without proper safeguards. This is not nonfeasance, or doing nothing; but it is misfeasance, doing improperly." It was accordingly held that "negligence and unskilfulness in the management of inflammable gas, by reason of which it escapes and causes injury," could not be regarded as mere nonfeasance.

This general principle is recognized in numerous authorities including *Mechem on Agency,* sec. 572; 31 *Cyc.* 1560; *Illinois Central R. R. Co.* v. *Foulke,* 191 Ill. 57; *Ellis* v. *McNaughton,* 76 Mich. 237; *Bell* v. *Josselyn,* 3 Gray, 309; *Southern Ry. Co.* v. *Grizzle,* 124 Ga. 735.

The cases cited by the appellant upon this point were instances of nonfeasance. In *Nickerson* v. *Bridgeport,* 46

Conn. 24; *Atkinson* v. *New Castle,* L. R. 2 Exch. Div. 441; and *Davis* v. *Clinton,* 54 Ia. 59, no recovery was permitted from water companies, at the suit of third persons, for loss by fire resulting from the failure to supply water to the municipalities with which they had contracted for that purpose; while in *Lampert* v. *LaClede Gas Co.,* 7 Western Rep. 745, it appeared that the Gas Company had agreed with the City to keep the street lamps in repair, and it was held that a person injured by a broken lamp-post, left in a dangerous condition on a public highway, could not recover against the company. The situations presented in these cases were essentially different from that with which we are here confronted. They would be analogous to the case at bar if the water companies, in the cases first mentioned, instead of failing to furnish water, had forced it through defective pipes and had thereby caused it to escape to the injury of the plaintiffs; and if the Gas Company, in the case last cited, instead of merely omitting to remove a broken lamp-post from a highway which it was the duty of the municipality to keep safe, had allowed gas to escape through the post and had thus caused injury to the person suing.

In this case it was not the fractured pipe but the discharge of gas that injured the appellees, and their recovery cannot be denied upon the theory that the negligence imputed to the appellant did not amount to misfeasance.

In support of the contention that the only recourse of the appellees was against the City, it was pointed out that the City, by ordinance had undertaken to keep the street-lamps in repair, and certain of its enactments on the subject were offered in evidence. These commit to the Superintendent of Lamps and Lighting the duty of providing for the lighting, cleaning and repairing of the "City lamps," and for the "furnishing, construction, erection, repair or removal of all street lamps and lamp pillars." By their plain terms these provisions deal only with the *lamps* and *lamp-posts* furnished by the City, and they make no reference to the *service pipes*

through which the lamps were to be supplied with gas. Under
the authority of the ordinance quoted, the Superintendent,
on behalf of the City, contracted with the American Lighting
Company for the lighting, extinguishing and cleaning of the
lamps, and the equipment, maintenance, painting and repair
of all the "lamp-posts, lanterns, equipment and property of
the City."

It, therefore, appears that the City neither assumed for
itself nor undertook to delegate to the contractor, just men-
tioned, the duty of keeping in order the connecting pipes, but
that duty was left, where it properly belonged, with the com-
pany that installed them for the transmission of the gas
which it had contracted to deliver to the lamps. *Blondell* v.
*Consol. Gas Co.,* 89 Md. 748.

The questions we have considered were raised upon ex-
ceptions to the granting of the plaintiffs' second prayer, and
to the refusal of the prayer offered by the defendant for the
withdrawal of the case from the jury. These latter prayers
were predicated upon theories which we have discussed and
disapproved. The second prayer of the plaintiff was objected
to on the ground, in addition to the contentions we have re-
viewed, that it permitted the jury to render a verdict against
the defendant if they should find that by reason of its failure
to use due care the gas supplied by the defendant "leaked or
escaped from its pipes, *or from pipes which in the operation
of its business it used and assumed the duty of repairing,*" to
the injury of the plaintiff. It is urged that the alterative we
have italicized in this instruction is not in accordance with
the declarations, which charge that the Gas Company was
negligent in failing to repair *its* pipes. We do not consider
this objection tenable. The declarations are, in our opinion,
sufficiently broad to cover both the theory of ownership of
the pipes by the company, and the theory of its assumption
of their control and repair, as the pipes which the company
assumed the duty of repairing were part of its system for

distributing its product and were "its" pipes for all the intents and purposes of its liability in these suits.

The rulings of the Court below accord with the views we have expressed, and the judgments appealed from will be affirmed.

*Judgments affirmed, with costs.*