ERNEST M. LARMORE *v.* STATE OF MARYLAND
GEORGE E. WRIGHT *v.* SAME
CHARLES R. PARKER *v.* SAME
JAMES S. ADKINS *v.* SAME
H. LAY PHILLIPS *v.* SAME

[Nos. 6, 7, 8, 9 and 10, January Term, 1942.]

348

*Decided February 4, 1942.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, FORSYTHE, and MARBURY, JJ.

*Frederick W. C. Webb* and *Levin C. Bailey,* with whom were *William W. Travers* and *Victor H. Laws, Jr.,* for the appellants.

*Robert E. Clapp, Jr., Assistant Attorney General,* with whom were *William C. Walsh, Attorney General,* and *Rex A. Taylor, State's Attorney for Wicomico County* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The appellants, formerly constituting the County Commissioners of Wicomico County, were jointly indicted and convicted of the common law crime of misfeasance in office, in approving and passing for payment fictitious and fraudulent claims made up by a dishonest clerk. *Mechem, Public Offices and Officers,* Sec. 1022; 2 *Wharton, Criminal Law,* 12th Ed., Sec. 1910. They now on their appeal urge the existence of error in the overruling of their demurrer to two counts of the indictment, a second and a seventh, and in the exclusion of evidence

offered by them to prove diligence in the manner of executing their duties, and in their reliance upon their clerk.

The duties of the office are prescribed in the Code, 1939, Article 25. By Section 1 the commissioners are given charge and control of the county property, by Section 9 they are directed to assess and collect taxes for county expenses, "and pay and discharge all claims on or against the county which have been expressly or impliedly authorized by law"; and by Section 10 it is provided that "they shall allow no claim against the county not properly chargeable to the same and for which the claimant shall not produce a legal voucher." By Section 207 of Article 23 of the Code of Public Local Laws, 1930, of the county, money duly deposited is to be drawn only upon check of the president of the commissioners, countersigned by the treasurer of the county, "in payment of debts and accounts, due by Wicomico County, duly approved and passed by said county commissioners and by them ordered to be paid."

There was evidence tending to prove that in the year 1940 two fraudulent and fictitious vouchers, for $228 and $135, respectively, among others, were issued and paid upon presentation by the clerk to the commissioners, and signatures forged by her, when there was no indebtedness for the amounts and no authorization or warrant by the commissioners. The clerk, in the course of a career of theft covering some years, followed a practice of taking checks from the treasurer's office, without authority, having them signed by the president of the board upon her assurances of indebtedness, then having the treasurer countersign, and with the countersignature affixed returning to the office of the commissioners, forging the names of payees, and cashing the checks and appropriating the money to her own use. Spurious bills were sometimes presented to the commissioners and sometimes it was represented that the bills were too voluminous for presentation.

This clerk had first been appointed by a previous board of commissioners, under the authority of the Acts of

1927, Chapter 226, and Acts of 1937, Chapter 207 (Wicomico County, Code, Pub. Loc. Laws, 1930, Art. 23, Sec. 202), which defined the clerk's duties and required that he should give bond in the penalty of $10,000 for the faithful performance of them. After a general direction that the clerk shall perform all duties required by law, or by order of the commissioners, it is specified that he shall keep minutes of the board's actions, preserve papers presented to it and acted upon, keep books of the county properties and moneys, and of appropriations made by the board, keep a warrant book of the county, and make out every warrant authorizing payment of moneys, to be executed by the president of the board and by the clerk, and keep entries showing the contents of the warrants. The duties specified do not to any extent include those previously imposed on the members of the board themselves; they are clerical duties, or duties of an assistant. The commissioners remain charged with the management of the county's finances as specified.

The charge in the counts of the indictment considered on the demurrer was that the commissioners "unlawfully and negligently did allow, approve and pass for a payment a fictitious and fraudulent claim against Wicomico County designated as Voucher No. 49,599 (in the one count or 49,276 in the other), in the amount of $228 (in the one count or $135 in the other) without first having inquired and found out for themselves whether any such claim was due by Wicomico County and for which they, while acting in the capacity of commissioners, as aforesaid, were authorized and required by law to pay."

It is objected that this charge demands the exercise of an impossible degree of care on the part of the commissioners, and wrongly supposes that they are denied any right to rely upon the honesty and care of their clerk. But the court does not see that it is properly subject to this criticism. Considered apart from the subsequent evidence, as it must be considered on the demurrer, the charge is nothing more than that of passing payments

negligently, without making the inquiries that would enable them to perform their statutory duty of verifying the indebtedness. There is no restriction to any particular method, and no denial of any particular reliance. Passing for payment without any inquiry is the gist of the charge, and that action would constitute a dereliction of duty. The only objection which might have been made would seem to have been that it was too general to give the defendants exact information needed for their defense, and the corrective for that defect would have been a bill of particulars. *Neusbaum v. State*, 156 Md. 149, 143 A. 872. The court does not see, however, any likelihood that the defendants were prejudiced in their defense by lack of particularity in the counts. And it considers the demurrer properly overruled.

It was in rulings excluding evidence offered that the trial court adopted the measure of duty chiefly complained of. In the exclusion which is the subject of a fourteenth exception this was summed up in a statement that the commissioners cannot delegate their duty and responsibility to another person. Counsel have strongly urged that contrary to the theory expressed, the commissioners were by reason of the intended character of the clerk under the statute defining her duties, and the extent of those duties, justified in law in their practice of accepting her representations in respect to bills payable by the county. The commissioners, it is urged, live far apart, in scattered parts of the county, are therefore not accessible at all times, and cannot keep in touch with the facts sufficiently to be informed of the indebtedness as is now demanded of them, and naturally and of necessity place their reliance in the clerk, who is resident at the county seat, and whom the law has provided for their assistance. The bond exacted by the clerk, of the high penalty stated, is thought to evidence an intention in the law that he (or a woman clerk in this instance) should act as the manager of details of the commissioners' work.

It is understandable that officers provided with a clerk in whom they have confidence should leave much of the performance of their duties to her; but they cannot, except at their peril, leave to her duties which the statute commits to them. Acceptance of the offices is acceptance of those duties, and they cannot be delegated. The community may exact performance by them accordingly. The court does not, of course, undertake to define a system by which this performance may be accomplished; that may vary to some extent. But there must be some practice adopted by which the commissioners will verify indebtedness and expend the money of the county where due.

These considerations seem to answer the complaint of the appellants in their exceptions to rulings on evidence. There are thirty of them, and the appellants have argued them in four groups, raising four questions. The appellants were prepared to prove, and offered evidence to prove, that in their work they were following a system used by previous boards of commissioners, that they neither received any of the stolen funds nor had any knowledge of the clerk's dishonesty or any reason to suspect it, that members of previous boards who had better knowledge of her character and capacity had recommended that she be retained in the position, and that within the experience of these commissioners themselves she performed her duties capably and efficiently without any appearance of dishonesty. The trial court excluded all this evidence. It is no defense that for the performance of the duties imposed on them by the statute they followed the practice of previous boards. Customary neglect could not fix a standard of performance. The apparent reliability of the clerk would not be ground of defense, for the charge is not one of failure of ordinary care, but failure in duties specifically defined. And the honesty of the commissioners themselves, and their justified assumption of honesty in the clerk, would not serve as a defense for the dereliction of duty which enabled

the clerk to steal the county funds.   The evidence was properly excluded.

The court finds no error as argued.

> *Judgments affirmed, with costs, in all five appeals.*