STATE *v.* CARTER ET AL.

[No. 18, October Term, 1952 (Adv.).]

*Decided June 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Anselm*

*Sodaro, State's Attorney for Baltimore City, William H. Maynard, Deputy State's Attorney,* and *William C. Rogers, Jr., Assistant State's Attorney,* on the brief, for the appellant.

*G. C. A. Anderson* for Wilford L. Carter, appellee.

*E. Milton Altfeld* for George F. J. Brown, appellee.

*Ellis Levin,* with whom was *William Greenfeld* on the brief, for Alfred Scherr, appellee.

Submitted on brief by *Alan H. Murrell,* for Carl O. Martin, appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case, advanced at the request of the Attorney General, is an appeal by the State from an order of the Criminal Court of Baltimore, dismissing an indictment brought by the grand jury of Baltimore City against the Clerk of the Criminal Court of Baltimore, the Chief Deputy Clerk of that court, and two bail clerks of that court, jointly. The indictment is captioned: "Malfeasance in Office" and reads as follows:

"The Jurors of the State of Maryland, for the body of the City of Baltimore, do on their oath present that on the eleventh day of January, in the year of our Lord nineteen hundred and fifty-one, and thence continually until and including the tenth day of January, in the year of our Lord nineteen hundred and fifty-two, at the City aforesaid, WILFORD L. CARTER, late of said City, was then and there the Clerk of the Criminal Court of Baltimore, duly and regularly elected, qualified and acting as such, charged with the duties of that office, and that GEORGE F. J. BROWN, late of said City, was the Chief Deputy Clerk of the Criminal Court of Baltimore, duly and regularly appointed, qualified and acting as such, charged with the duties

of that Office; that ALFRED SCHERR and CARL O. MARTIN, late of said City, were then and there Bail Clerks of the Criminal Court of Baltimore, duly and regularly appointed, qualified and acting as such, charged with the duties of that office; and it was then and there the duties of the said WILFORD L. CARTER, GEORGE F. J. BROWN, ALFRED SCHERR and CARL O. MARTIN, to require persons who offered bail and security for other persons charged with violations of the Criminal Law in Baltimore City, to post proper, adequate and sufficient bail and security; that at the time aforesaid and for a long period of time prior thereto Harold Brown, Robert L. Foote, Jean Deck, Earl L. Hornstein, Beatrice S. Hornstein, Esther Hornstein and Meyer Hornstein, and certain other persons whose names are to the Jurors aforesaid unknown, were then and there, in said City and State, engaged in furnishing bail and security for other persons charged with Violation of the Criminal Law in Baltimore City; and the said WILFORD L. CARTER, GEORGE F. J. BROWN, ALFRED SCHERR and CARL O. MARTIN, well knowing the premises, in wilful disregard and violation of their duties as Clerk, Chief Deputy Clerk, and Bail Clerks of the Criminal Court of Baltimore, as aforesaid, and perverting the trust reposed in them as aforesaid, on the eleventh day of January, in the year of our Lord nineteen hundred and fifty-one, and thence continually until and including the said tenth day of January, in the year of our Lord nineteen hundred and fifty-two, while they, the said WILFORD L. CARTER, GEORGE F. J. BROWN, ALFRED SCHERR and CARL O. MARTIN, were Clerk, Chief Deputy Clerk, and Bail Clerks of the Criminal Court of Baltimore, as aforesaid, and

under color of their said offices, unlawfully wilfully, corruptly, knowingly and contemptuously did fail, refuse and neglect to perform their said duties as Clerk, Chief Deputy Clerk and Bail Clerks of the Criminal Court of Baltimore, as aforesaid, and they, the said WILFORD L. CARTER, GEORGE F. J. BROWN, ALFRED SCHERR and CARL O. MARTIN, Chief Clerk, Chief Deputy Clerk and Bail Clerks of the Criminal Court of Baltimore, as aforesaid, permitted, connived at and allowed Harold Brown, Robert L. Foote, Jean Deck, Earl L. Hornstein, Beatrice S. Hornstein, Esther Hornstein and Meyer Hornstein, and other persons whose names are to the Jurors aforesaid unknown, to post improper, inadequade and insufficient bail and security for other persons charged with violation of the Criminal Law in said City and State, to the evil example of all others in like manner offending, and against the peace, government and dignity of the State."

The court dismissed the indictment for two reasons—first, because it said that it contained in one count three separate and distinct crimes, malfeasance, misfeasance, and nonfeasance in office, and therefore was duplicitous; and second, because it charged a joint crime on the part of all the defendants together, and it seemed to the court that the charge must indicate separate and several crimes which should be charged in separate indictments against each defendant individually.

The contention that the appellees cannot be properly jointly charged in one indictment is based upon the fact that they each have separate duties, and that evidence tending to prove the guilt of one would not necessarily prove, or tend to prove, the guilt of another. The indictment, however, does not allege that separate crimes were committed by each of the defendants, but it alleges that they jointly committed the crimes charged by permitting certain persons to post improper, inadequate

and insufficient bail for people charged with crimes. Whatever their respective duties may have been, it is charged that they jointly performed the acts which constitute the crimes charged, and that in the case of each one this was misconduct in office. It is suggested that while the Clerk had the duty of seeing that the entire office force obeyed the law, and while the Deputy Clerk was charged with the same duty under the Clerk, each of the bail clerks had duties which were limited to taking bail. Thus, in case evidence was offered to show that one of these bail clerks took improper bail, it is said that might be shown to be with the connivance of the Clerk and of the Deputy, but it could not bind the other bail clerk, unless he actually participated in the transaction. However, at this stage of the case, we are not concerned with the nature of the proof which the State might offer, or what proof might be admissible under the indictment. It is not impossible that the State will attempt to prove that all of the parties charged participated in each taking of improper bail. We must consider the indictment on its face, and whether its charges are sustained by proof cannot be determined until the trial. Difficulty of proof is not a ground for holding that an indictment is bad. It is a mere argument of convenience. *Damasiewicz v. Gorsuch,* 197 Md. 417, 437, 79 A. 2d 550, 559.

In the case of *State v. Monfred,* 183 Md. 303, 37 A. 2d 912, 913, we said: "Where, however, several persons engage in the commission of a criminal act, so that all are guilty of the crime in some degree, all or any of them may be joined in one count or separate counts of the same indictment, or they may be indicted separately." And it was further stated in that case that where the same evidence as to the act which constitutes the crime applies to two or more persons, they may be indicted jointly. In the indictment in the *Monfred* case, which was joint, the first six counts charged that each of the defendants did certain things, and we held that the necessary inference from that was that each individually

committed the offenses charged without concert of action. These six counts were held to be demurrable because on their faces they showed that no joint offenses were alleged. Two other counts were held good because they alleged that each of the defendants unlawfully combined with each other to do certain things. The count before us in this case, while it does not allege conspiracy, and while there was a companion conspiracy indictment which was held good by the court, does allege joint action, and, therefore, it cannot be held bad on its face. Whether the appellants could have been charged separately, or whether it would be better to have so charged them, are matters not within our province. We have to take the indictment as it was found, and determine whether, as found, it constitutes a valid charge. We hold that it does, and the question of what evidence will be admissible under it is a matter for future determination when the case is tried.

The other objection raised by the appellees and decided in their favor by the court below was that the indictment is duplicitous because it charges two or three separate crimes, these being malfeasance, misfeasance, and nonfeasance in office. The appellees claim that the statement in the indictment that the defendants corruptly, knowingly and contemptuously did fail, neglect, and refuse to perform their duties is malfeasance, and also is nonfeasance, and that the charge that they permitted, connived at and allowed certain persons to post improper, inadequate and insufficient bail is misfeasance. They cite a number of cases for the familiar principle that any count in an indictment which charges two or more separate and distinct offenses is bad for duplicity. See *Weinstein v. State,* 146 Md. 80, 125 A. 889; *Jackson v. State,* 176 Md. 339, 401, 5 A. 2d 282; *Kirsner v. State,* 183 Md. 1, 5, 36 A. 2d 538. The answer to this objection to the indictment before us does not depend on what are malfeasance and misfeasance, and, possibly, nonfeasance, (*Wharton's Crim. Law,* 12th Ed., Vol. 1, Secs. 30, 167 and 168. *Donnelley v. United States,* 276 U. S. 505, 516,

48 S. Ct. 400, 72 L. Ed. 676. *Russell* on *Crimes*, 9th Am. Ed., Vol. 1, Ch. 14, p. 198. *People v. Herlihy*, 35 Misc. 711, 72 N. Y. S. 389, and authorities cited. Same case, 66 App. Div. 534, 73 N. Y. S. 236, and 170 N. Y. 584, 63 N. E. 1120), but whether the count in the indictment before us does actually charge the commission of more than one of these offenses.

The indictment in this case is captioned: "Malfeasance in Office", but as the Court of Appeals of Georgia has well said in a similar situation: "* * * it is well established by numerous decisions of the Supreme Court and this court that the *name* of a crime given in an indictment does not determine the offense alleged to have been committed by the accused, but the offense is determined by the facts stated in the indictment." *Cargile v. State,* 67 Ga. App. 610, 21 S. E. 2d 326, 327. Nearly one hundred years ago (1855), the Supreme Judicial Court of Massachusetts announced the following definitions, with its authority therefor: "Nonfeasance is the omission of an act which a person ought to do; misfeasance is the improper doing of an act which a person might lawfully do; and malfeasance is the doing of an act which a person ought not to do at all. 2 Inst. Cler. 107. 2 Dane Ab. 482. 1 Chit. Pl. (6th Amer. ed.) 151. 1 Chit. Gen. Pract. 9." *Bell v. Josselyn,* 69 Mass. 309, 311, 3 Gray 309, 311. These are the definitions which, with some enlargement, seem to run through all of the text books and cases. See *Words and Phrases,* Permanent Edition, Vol. 26, p. 139, et seq., Title, Malfeasance, and Vol. 28, p. 722, et seq., Title, Nonfeasance, and the numerous cases cited which make the same distinction. In *Webster's International Dictionary,* 2nd Edition, malfeasance is defined as: "The doing of an act which a person ought not to do; evil conduct; an illegal deed;— often used of official misconduct or an instance of it." Misfeasance is defined as: "The doing wrongfully and injuriously of an act which a person might do in a lawful manner; the doing of a lawful act in an unlawful manner, or the wrongful and injurious exercise of lawful

authority." The State contends that malfeasance carries with it the connotations of wilfulness, evil intent or motive, and corruption, and cites a number of cases to support this view, but all of these cases contain in one form or another the definitions above mentioned. *Carlisle v. Burke,* 82 Misc. 282, 144 N. Y. S. 163, 164. *State, ex rel. Knabb v. Frater,* 198 Wash. 675, 89 Pac. 2d 1046. *Lucas v. Central Missouri Trust Co.,* 350 Mo. 593, 166 S. W. 2d 1053, 1056. *State v. Bolitho,* 103 N. J. L. 246, 136 A. 164, 172. *State, ex rel. Hardie v. Coleman,* 115 Fla. 119, 155 So. 129, 92 A. L. R. 988. It is undoubtedly true that the doing by a public official of an act which he ought not to do carries with it some measure of wilfulness and bad intent, and may be induced by corrupt motive, but these are only necessary or probable accompaniments. They may also accompany the doing of a lawful act unlawfully, which is misfeasance. The test seems to be in the nature of the act, and not in the motive by which it is done.

The cases in this court do not always call misconduct in office by either one of the two terms, malfeasance or misfeasance, but when they do use the words, they seem to recognize the distinction. In *Consolidated Gas Co. v. Connor,* 114 Md. 140, 78 A. 725, 32 L. R. A., N. S., 809, a civil case, nonfeasance and misfeasance are given the usual definitions above mentioned. *Hiss v. State,* 24 Md. 556, was an indictment against a justice of the peace. A defendant had been brought before this officer, accused of stealing bank notes. He was searched and certain bank notes were taken from him and delivered to the justice. The justice, however, refused to turn them over to the person entitled to them, and the indictment said that this was done "unlawfully, wilfully, oppressively, corruptly, and in violation and contempt of his duty". The court there held that all the elements of crime were enumerated in the indictment and upheld it, but it did not describe the crime charged by any particular name. It said: "It is immaterial whether the law imposed upon him the duty to receive the property,

(of which we express no opinion,) it was received by him, under color of his office, if not *'virtute officio'*, and there can be no doubt of his legal obligation to restore it to the person entitled." (24 Md. 562.) The court expressly declined to decide, as immaterial, whether the defendant was doing something he had a right to do, unlawfully, or whether he was doing something which he had no right to do at all.

In *Mohler v. State,* 120 Md. 325, 87 A. 671, the accused was a constable who was found guilty of malfeasance in office. This court ruled upon the validity of the indictment, and one of the points made was that there were included in the single count four distinct and substantive offenses. The first was that he had wrongfully, unlawfully, and corruptly accused one of a crime; second, that he similarly obtained a warrant for that person's arrest; third, that by color of his office and with this warrant he corruptly and extorsively took him before a justice; and fourth, that at a pretended trial, he corruptly and extorsively coerced him to pay a sum of money. The charge was that the defendant, in the justice's trial, had not been guilty of any offense, but by these actions, he was forced to pay the justice the sum of $15.00, and that the accused received part of this $15.00 from the justice. The court referred to the fundamental principal that not more than one distinct and substantive offense could be charged in any one count, saying, however: "But it is equally recognized, that a count is not double because it charges several related acts, all of which enter into and constitute the offense, although such acts may in themselves constitute distinct offenses. If the acts alleged are of the same nature and so connected that they form one criminal transaction, they may be joined in one count, although separately considered they are distinct offenses. If they can be construed as stages in one transaction and are not inherently repugnant, the count will not be bad for duplicity." The court then went on to say that the particular misconduct with which the appellant was

charged was that he corruptly obtained money under cover of his office. The other averments were merely recitals of the means taken by him to accomplish that end, and, considered as a whole, they constituted one transaction.

In *Hitzelberger v. State,* 174 Md. 152, 197 A. 605, a police officer was charged with permitting the operation of houses of prostitution in the City of Baltimore. It did not appear from the evidence that he was actuated by motives of graft, but merely that for other reasons he permitted several persons with whom he had friendly relations to operate these houses. This court called this action "malfeasance in office", saying that it was a misdemeanor and had to be prosecuted within one year from the date of commission. On the other hand, in the two more recent cases of *Larmore v. State,* 180 Md. 347, 24 A. 2d 284, and *Bennett v. State,* 180 Md. 406, 24 A. 2d 786, the county commissioners and the treasurer of one of the counties of the State were charged with *misfeasance* in office because they approved and passed for payment fictitious and fraudulent claims made up by a dishonest clerk. There was no evidence that the commissioners had any corrupt or wilful motive; they relied on the clerk and did not make any examination of the claims or the vouchers accompanying them, which it was their duty to do. The treasurer was similarily negligent in not making sure that the commissioners had properly examined the claims. This was, of course, misfeasance and not malfeasance under the definitions, and was properly so termed by the court. A similar case was *State v. Wheatley,* 192 Md. 44, 63 A. 2d 644, 646. The charge in that case was the wilful neglect or failure of an employee of the Employment Security Board in paying compensation payments to a claimant who was not entitled to them, without making the kind of examination required by law. This was, of course, misfeasance, and the court said: "* * * it is a criminal offense for a public officer to wilfully neglect to perform a ministerial duty which he is bound to perform either by common

law or by statute, unless the discharge of such duty is attended with greater danger than a man of ordinary firmness and activity may be expected to encounter."

*State v. Page,* 163 Md. 505, 163 A. 493, was an indictment against the bank commissioner. The court said that the defendant was indicted for malfeasance, misfeasance and nonfeasance in office, and then discussed the six counts of the indictment in detail and found that what he was charged with was not part of his duty and was something which he had no authority to do as a public official, that the bad advice about a bank consolidation with which he was charged was simply given in his individual capacity, and he was not indictable for doing that. In each of the counts of the indictment in that case, it was contended that the defendant did what he was charged with "unlawfully, wilfully and knowingly", and in several of them, the word "negligently" was added, and, in one of them, it was said that he acted also "recklessly, falsely and fraudulently". The court said: "In considering that question, it may be premised that mere adjectival or qualifying words cannot in themselves supply the omission of substantive words to which the quality indicated by the adjective is attributed. Which is no more than to say that the facts out of which the supposed illegality arises are essential to the description of an offense, and that it is not sufficient to characterize an act as willful, felonious, unlawful, or the like, without stating facts which give it that character."

In the indictment now before us, the use of the words "in wilful disregard and violation of their duties * * * and perverting the trust reposed in them" does not constitute a description of the offense charged, nor does the statement that the defendants "under color of their said offices, unlawfully, wilfully, corruptly, knowingly and contemptuously did fail, refuse and neglect to perform their said duties" constitute of itself a valid charge, although it is a proper allegation to make of motive or intention in connection with the specific thing which the

defendants are later alleged to have done. We find this at the end of the indictment which states that "they * * * permitted, connived at and allowed Harold Brown * * * and other persons * * * to post improper, inadequate and insufficient bail and security for other persons charged with violation of the Criminal Law * * *". That is the gravamen of the charge, and it is not particularly important what it is called. The indictment, of course, charges that these defendants did something which they ought not to have done, but this was in the course of their duty to accept bail, and they are charged with performing this duty corruptly and improperly. Whether this is called malfeasance or misfeasance or nonfeasance, it is a clear charge of misconduct in office, and it is the only charge contained in the indictment. All that precedes it are statements of motive and method leading up to the description of the crime. There are not two or three separate crimes charged in the indictment. There is only one crime, and the count cannot be held to be duplicitous.

An indictment is sufficient if it informs the persons charged of the accusation against them, and if it is sufficiently explicit to prevent the accused from again being charged with the same offense. *State v. Petrushansky*, 183 Md. 67, 74. Under some circumstances, this court has held that indictments do not satisfy these requirements, and cannot be made good by a bill of particulars. *State v. Lassotovitch*, 162 Md. 147, 159 A. 362, 81 A. L. R. 69. *Imbraguglia v. State*, 184 Md. 174, 40 A. 2d 329. If, however, the defendants are definitely informed of the charge against them, and the charge is so framed as to enable them in any future prosecution to claim *autrefois convict*, or *autrefois acquit*, as the case may be, then the indictment is sufficient. If more particulars of the offense are required, they can be obtained by a demand for, and the furnishing of, a bill of particulars, which the record shows has already occurred in this case. The defendants are clearly informed that they are jointly charged with taking im-

proper bail bonds from certain persons in violation of their duties. They are advised in the indictment of dates within which this was done, and the names of the persons from whom the bonds were taken. The State has limited these charges by its bill of particulars to certain specified occurrences occurring on specific dates. There is nothing indefinite in the charges, and we think the indictment is good. So holding, the order of the trial court will be reversed.

*Order reversed with costs.*